1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ISRAEL RIOS,                          Lead Case No.  1:19-cv-01009-KES-HBK
                                           Member Case No. 2:20-cv-00146-ADA-HBK
12                Plaintiff,
                                           ORDER GRANTING IN PART
13        v.                               DEFENDANT'S REQUEST FOR JUDICIAL
                                           NOTICE
14   NANDAKUMAR RAVI and JOSEPH
     DRAGON,                               (Doc. No. 47-3)
15
                  Defendants.              FINDINGS AND RECOMMENDATIONS TO
16                                         GRANT IN PART DEFENDANT'S MOTION
                                           TO DISMISS[1]
17
                                           (Doc. No. 47)
18
                                           ORDER DENYING PLAINTIFF'S REQUEST
19                                         FOR JUDICIAL NOTICE
20                                         (Doc. No. 63)
21                                         FINDINGS AND RECOMMENDATION TO
                                           DENY DEFENDANT RAVI'S MOTION FOR
22                                         SUMMARY JUDGMENT
23                                         (Doc. No.  61)
24                                         FOURTEEN-DAY OBJECTION PERIOD
25

26

27   _____
     [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28   (E.D. Cal. 2023).  The instant motion was filed only on behalf of Defendant Nandakumar Ravi.

Pending before the Court are two motions filed by Defendant Nandakumar Ravi.  The first, a Motion to Dismiss was filed January 30, 2023.[2]  (Doc. No. 47, "MTD").  Ravi seeks dismissal of Plaintiff's operative complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  (*Id.* at 1).  Prior to Plaintiff filing a response to the MTD, Defendant Ravi filed a reply, which the Court struck.  (Doc. Nos. 48, 54).  Plaintiff timely filed an Opposition to the MTD (Doc. No. 50), and Defendant Ravi filed a second Reply, which the Court deemed the operative Reply.  (Doc. Nos. 51, 54).  In support of his MTD, Defendant Ravi requests the Court take judicial notice of medical documents related to his treatment of Plaintiff.  (Doc. No. 50 at 43-55).  The Court heard oral argument on the MTD on March 8, 2023.  (Doc. No. 53).  Finding that whether Defendant Ravi is a state actor potentially dispositive of the case, the Court converted the MTD into a limited motion for summary judgment on the state actor issue only, reserving its ruling on the other aspects of the MTD, and ordered the parties to submit additional briefing related to the state actor issue.  (Doc. No. 55).

Accordingly, on March 18, 2024, Defendant Ravi filed a free-standing Motion for Summary Judgment limited to the issue of whether Defendant Ravi was a state actor.  (Doc. No. 61, "MSJ").  Plaintiff timely filed an Opposition to the MSJ.  (Doc. No. 62).  Plaintiff also filed a request for judicial notice in support of his Opposition to the MSJ.  (Doc. No. 63).  Ravi filed a Reply in support of his MSJ.  (Doc. No. 64).  For the reasons stated herein, the Court denies Plaintiff's request for judicial notice in opposition to Ravi's MSJ but nonetheless recommends the district court deny Ravi's limited MSJ as it raises issues of fact suitable for a jury.

Turning to the remaining grounds raised by Defendant Ravi in his MTD, the Court grants in part Defendant's request for judicial notice in support of the MTD (Doc. No. 47-3) and recommends the district court grant in part the MTD (Doc. No. 47) .

## BACKGROUND

Plaintiff Israel Rios ("Plaintiff" or "Rios"), a state prisoner, initiated this action by filing a pro se complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  The complaint named as Defendants the

---

[2] Defendant Dragon, N.P. does not join in the instant motions.

wardens of High Desert State Prison ("HDSP") and Substance Abuse Treatment Facility ("SATF"), a physician at California Training Facility, and five Doe defendants. (*See* Doc. No. 1). The complaint alleged deliberate medical indifference to Plaintiff's serious medical needs. (*Id*.). Neither Defendant Dragon nor Defendant Ravi was named in the initial complaint. The previously assigned magistrate judge screened the complaint and found that it failed to state any cognizable claim and granted leave to amend. (Doc. No. 7).

Plaintiff timely filed a first amended complaint, naming only Defendant Ravi as a defendant. (Doc. No. 8, "FAC"). The previously assigned magistrate judge screened the FAC and found that it stated a cognizable claim as to Defendant Ravi and ordered Ravi served. (Doc. No. 12). After Defendant Ravi filed a motion to dismiss and motion to strike portions of the complaint (Doc. Nos. 17, 19), Plaintiff filed a motion to amend, which the undersigned granted. (Doc. No. 25).

Thereafter, Plaintiff filed a second amended complaint, naming only Chinyere Nyenke, M.D., as a Defendant. (*See* Doc. No. 26, "SAC"). Plaintiff also filed a motion to consolidate this case with Case No. 2:20-cv-00146. (Doc. No. 29). The undersigned screened the SAC, found it failed to state a cognizable claim, and deferred ruling on the motion to consolidate. (*See* Doc. No. 30). After the Court granted Plaintiff's construed motion for extension of time (Doc. Nos. 33, 37), the Court appointed counsel for Plaintiff and accepted Plaintiff's proposed third amended complaint, naming Joseph Dragon and Nandakumar Ravi as Defendants. (Doc. No. 36, "TAC"). The undersigned screened the TAC and found it stated cognizable claims of deliberate medical indifference against Defendants Dragon and Ravi, and ordered the Defendants served. (Doc. Nos. 39, 40). The undersigned then issued an Order granting Plaintiff's Motion to Consolidate. (Doc. No. 45). Defendant Ravi thereafter filed the instant Motion to Dismiss and Request for Judicial Notice. (Doc. No. 47).

In the Motion to Dismiss, Defendant argues *inter alia* that he is not a state actor and therefore cannot be sued in a 42 U.S.C. § 1983 action. (Doc. No. 47-1). The Motion also argues that Plaintiff's TAC failed to allege sufficient facts to state an Eighth Amendment claim against Ravi and that Plaintiff's state law medical malpractice claim was time-barred and alternatively

1   should be dismissed under Rule 12(b)(1) due to the lack of a cognizable federal claim conferring

2   federal jurisdiction on this Court.  (*Id*. at 14-21).  Finding that the state actor issue could render

3   the remaining arguments moot, the Court converted the Motion to Dismiss into a limited Motion

4   for Summary Judgment as to whether Defendant Ravi is a state actor and ordered the Parties to

5   engage in limited discovery and submit additional briefing on the state actor issue only.  (*See*

6   Doc. No. 55).

7                                   **LIMITED MOTION FOR SUMMARY JUDGMENT**

8          On March 18, 2024, Defendant Ravi filed the instant MSJ, including (1) a memorandum

9   of points and authorities, (Doc. No. 61), (1) the Declaration of Defendant Ravi along with two

10   exhibits, (Doc. No. 61-2), and a statement of undisputed material facts, (Doc. No. 61-3).  In

11   Opposition, Plaintiff filed a memorandum of points and authorities (Doc. No. 62), (2) Plaintiff's

12   Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 62-1), (3) Plaintiff's

13   Separate Statement of Disputed and Undisputed Material Facts (Doc. No. 62-2), and (4) the

14   Declaration of Carter White including 160 pages of exhibits (Doc. No. 62-3).  Defendant filed a

15   Reply including (1) a Reply Memorandum of Points and Authorities (Doc. No. 64), (2)

16   Objections to Plaintiff's Evidence (Doc. No. 64-1), and (3) Objections to Plaintiff's Separate

17   Statement of Disputed and Undisputed Material Facts (Doc. No. 64-2).

18          **A.  Plaintiff's Request for Judicial Notice**

19          At any stage of a proceeding, courts may take judicial notice of (1) facts not subject to

20   reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2)

21   adjudicative facts, which "can be accurately and readily determined from sources whose accuracy

22   cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  A trial court may take judicial

23   notice of the existence of a related court matter but may not take judicial notice of a finding of

24   fact by another court.  *See M/V Am. Queen v. San Diego Marine Constr. Corp*., 708 F.2d 1483,

25   1491 (9th Cir.1983) (stating general rule that "a court may not take judicial notice of proceedings

26   or records in another cause so as to supply, without formal introduction of evidence, facts

27   essential to support a contention in a cause then before it"); *see also Lee v. City of Los Angeles*,

28   250 F.3d 668, 690 (9th Cir. 2001) (On a Rule 12(b)(6) motion to dismiss, when a court takes

1  judicial notice of another court's opinion, it may do so "not for the truth of the facts recited

2  therein, but for the existence of the opinion, which is not subject to reasonable dispute over its

3  authenticity.").

4        Plaintiff first asks the Court to take judicial notice of facts from the California Court of

5  Appeal decision in *Colonial Med. Grp., Inc. v. Dignity Health*, No. A145506, 2017 WL 2178831,

6  at *1 (Cal. Ct. App. May 18, 2017).  (Doc. No. 63 at 1).  Specifically, Plaintiff asks the Court to

7  take judicial notice of the fact that during the years 2010 through 2014, "Mercy contracted with

8  the California Department of Corrections and Rehabilitation to provide hospital services to prison

9  inmates and operated a 29-bed guarded unit and other guarded facilities."  (*Id*.).

10        While the Court may take judicial notice of the existence of judicial proceedings and

11  documents, it may not take judicial notice of findings of fact made in those proceedings, such as

12  the cited litigation.  *See M/V Am. Queen*, 708 F.2d at 1491; *see also In re Patacsil*, 2023 WL

13  2278596, at *1 (Bankr. E.D. Cal. Feb. 28, 2023) (noting that "[a] court may take judicial notice of

14  the documents filed in other courts . . . not for the truth of the matters asserted in the other

15  litigation, but rather to establish the fact of such litigation and related filings.") (citation and

16  internal quotation marks omitted).  Further, it is not apparent in what way the *Colonial Medical*

17  *Group* case is related to the present proceedings, beyond the fact that it appears to have involved

18  the same hospital system through which Plaintiff was seen by Dr. Ravi.  This is insufficient to

19  warrant judicial notice of another proceeding, which typically involves litigation of the same

20  matter or between the same parties.  *See Amphibious Partners, LLC v. Redman*, 534 F. 3d 1357,

21  1361-1362 (10th Cir. 2008) (noting judicial notice appropriate for court orders in previous case

22  involving the same parties); *Panera, LLC v. Dobson*, 999 F3d 1154, 1157 (8th Cir. 2021)

23  (granting  request for judicial notice of proceedings in state court that related directly to matter at

24  issue); *In re Patacsil*, 2023 WL 2278596, at *2 ("Where the parties engaged in prior litigation

25  that relates to the case now before the court judicial notice is frequently employed.")  Finally, the

26  facts cited in the *Colonial* case pertain to the years 2010 through 2014.  The events that give rise

27  to claim against Defendant Ravi the instant action occurred on or about September 20, 2018—

28  some three years subsequent to the time period in the *Colonial* case.  Because Plaintiff seeks

judicial notice of adjudicative facts set forth in a matter not related to the present proceeding and separated in time from the instant facts by more than three years, the Court denies Plaintiff's request as to the California Court of Appeal opinion.

Plaintiff next asks the Court to take judicial notice of information appearing on the website for Dignity Health, specifically the fact that Mercy Hospital in Bakersfield operates a 29-bed guarded care unit and that Golden Empire Managed Care, also known as GEM Care, which is part of the Dignity Health Medical Network.

A court "may take judicial notice of publicly available information found on a government agency's website." *Arthur v. United Indus. Corp.*, 2018 WL 2276636, at *4 (C.D. Cal. May 7, 2018) (citing *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015), *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)).  However, "information appearing on . . . third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination." *Gerritsen*, 112 F. Supp. 3d at 1029.

While the Court has no reason to dispute these facts, they are not "generally known within the territorial jurisdiction of the trial court" nor "capable of accurate and ready determination by the Court" and thus are not appropriate for judicial notice.  Accordingly, the Court denies Plaintiff's request as to the information on the Dignity Health website.

**B. Discussion**

1. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses,

1    showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1);

2    *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir.

3    2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

4    insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

5    evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

6    to return a verdict in that party's favor.  *Id.*

7         The court must view the evidence in the light most favorable to the nonmoving party.

8    *Tolan v. Cotton*, 572 U.S. 650, 655 (2014).  It may not weigh evidence or make credibility

9    determinations.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).  Conclusory or speculative

10   testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and

11   defeat summary judgment.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007);

12   *see* Fed. R. Civ. P. 56(c)(2).

13        The undersigned has carefully reviewed and considered all arguments, points and

14   authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

15   objections, and other papers filed by the parties.  The omission of an argument, document, paper,

16   or objection is not to be construed that the undersigned did not consider the argument, document,

17   paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

18   deemed admissible, material, and appropriate for purposes of issuing this Findings and

19   Recommendations on Defendant's MSJ.

20                    a.   Allegations in Operative Complaint

21        The claims giving rise to the cause of action occurred while Plaintiff was confined at High

22   Desert State Prison ("HDSP") where he saw Defendant Dragon, and at the Substance Abuse and

23   Treatment Facility ("SATF") where he saw Dr. Ravi via telemedicine appointment.  (Doc. No. 36

24   at 2).  The TAC sets forth two counts of Eighth Amendment deliberate medical indifference

25   against Defendant Dragon and Ravi respectively (Counts I and II), and a state law medical

26   malpractice claim against Defendant Ravi.  (*See generally id*. at 1-11).

27        In December 2017, while Plaintiff was incarcerated at HDSP, he was sent to the

28   emergency room following complaints of upper right quadrant pain and dizziness.  (*Id*. at 3-4,

                                                7

¶¶ 12-13).  At the hospital, Plaintiff was tested for the presence of a Helicobacter pylori ("H. Pylori") infection, which came back positive.  (*Id*. at 4 ¶ 15).  The hospital physician diagnosed Plaintiff with peptic ulcers caused by an H. pylori infection and prescribed a course of antibiotics. (*Id*. ¶ 16).  However, during a follow-up appointment, Plaintiff's primary care physician at HDSP rejected the hospital doctor's diagnosis, canceled the prescription for antibiotics, and ordered Plaintiff to see gastroenterologists.  (*Id*. ¶ 19).  Following tests performed by the gastroenterologists, on March 6, 2018 Plaintiff was again diagnosed with an H. pylori infection. (*Id*. at 4-5 ¶¶ 20-21).  On May 14, 2018, Plaintiff saw Defendant Dragon for a follow-up and upon reviewing Plaintiff's medical records, Dragon concluded, incorrectly, that Plaintiff's infection would be eradicated through a biopsy.  (*Id*. at 5 ¶¶ 26-27).  Dragon failed to prescribe Plaintiff antibiotics or confirm whether he had taken antibiotics.  (*Id*. ¶¶ 27-28).

On May 18, 2018, CDCR transferred Plaintiff to SATF.  (*Id*. at 6, ¶¶ 29-30). Within a month of his transfer, Plaintiff presented to the medical department at SATF and saw a physician (not named as a defendant in the TAC) and Plaintiff informed the physician that he had an active H. pylori infection but had never received antibiotics.  (Doc. No. 36 at 6 ¶ 31).  Instead of prescribing Plaintiff with antibiotics, the physician referred Plaintiff to an outside GI specialist. (*Id*.).  Approximately four months later, or on September 20, 2018, Plaintiff saw Dr. Ravi at Mercy Hospital Bakersfield ("MHB").[3]  (Id. ¶ 32).  Dr. Ravi noted that Plaintiff had been diagnosed with an H. Pylori infection but he did not prescribe antibiotics or ask whether Plaintiff had taken antibiotics.  (*Id*. ¶ 33).  Instead, Dr. Ravi recommended a hepatobiliary iminodiacetic acid scan ("HIDA")—a test for the gallbladder.  (*Id*. ¶ 33).  The HIDA test results showed "poor contraction of the gallbladder" and an "abnormal gallbladder ejection of 14%" whereas a normal empty rate is 30% or above."  (*Id*. ¶ 34).

Sometime in December 2018, CDCR transferred Plaintiff from SATF.  (*Id*. ¶ 36).  It was not until January 2019, when Plaintiff was seen by a new primary care physician at Correctional

---

[3] While the TAC asserts that Plaintiff "was transported to Mercy Hospital" to see Dr. Ravi, (Doc. No. 36 at 6 ¶ 32), as discussed further below, Plaintiff was not physically seen at MHB but rather had a telemedicine consultation with Dr. Ravi.

Treatment Facility ("CTF"), that the doctor prescribed Plaintiff antibiotics and later ordered surgery to remove his gallbladder.  (*Id*. at 7 ¶¶ 38-42).  Thereafter, Plaintiff's acute abdominal pain ceased.  (*Id*. ¶ 42).  As result of Defendants' failure to properly treat Plaintiff's medical condition, Plaintiff asserts he experienced "severe pain" for 10 months and that the failure to treat his H. Pylori infection exacerbated his existing gallbladder condition to the point of requiring surgical removal.  (*Id*. ¶¶ 43-44, *id*. at 2).  Plaintiff claims he now faces elevated risk of gastritis, duodenitis, peptic ulcers and gastric cancer due to Defendants' actions.  (*Id*.).

b.  <u>Undisputed Material Facts and Law</u>

As previously stated, the undersigned considers the entire record and deems only those facts true which are properly supported by evidence[4].  The undersigned finds the following facts to be either undisputed, or, following the undersigned's review of the evidence submitted, are deemed undisputed, unless otherwise indicated:

- In 2018, Dr. Ravi had a private practice in Internal Medicine and Gastroenterology.  (Doc. No. 61-2 at 2 ¶ 2).
- In 2018, Dr. Ravi was not employed by the California Department of Corrections and Rehabilitation ("CDCR").  (*Id*. ¶ 3).
- Dr. Ravi has never been an employee of the State of California.  (*Id*.).
- In 2018, Dr. Ravi was not an employee of Mercy Hospital Bakersfield.  Instead he only had hospital privileges at Mercy Hospital Bakersfield.  (*Id*. ¶¶ 5, 6; *id*. at 9).
- In 2018, Dr. Ravi did not have a contract with the State of California to provide medical care to CDCR inmates.  (*Id*. at 2 ¶ 3).
- The only time Dr. Ravi saw Mr. Rios was on September 20, 2018, which was a gastroenterology consult conducted via telemedicine.  (*Id*. ¶ 8; Doc. No. 62-3 at 5).  The consultation was not emergency room care.  (Doc. No. 62-3 at 5).
- During Dr. Ravi's telemedicine consultation with Plaintiff on September 20, 2018,

---

[4] In addition to relevance and materiality, the Court reviewed the Parties' statements of facts for admissibility, and deemed certain facts disputed in part based on admissibility objections asserted by Defendant Ravi.

Dr. Ravi was physically located at the Mercy Hospital outpatient clinic in Bakersfield.  (Doc. No. 62-3 at 11).

- During the September 20, 2018 telemedicine consultation, Plaintiff was a CDCR prisoner who was physically located at a CDCR prison facility.  (*Id.*).

- Golden Empire Managed Care ("GEMCARE") is an insurance company that paid Dr. Ravi for the medical treatment he provided to Plaintiff.  (Doc. No. 62-3 at 10).

- CDCR created a Physician Request for Services form in connection with its referral of Plaintiff to Dr. Ravi for medical care.  (Doc. No. 23 at 3).

c.   Disputed Material Facts

The following material facts are disputed:

- Plaintiff states that between April 19, 2018 and December 20, 2018, Dr. Ravi treated CDCR prisoners on 110 occasions.  Defendant "does not dispute that there are 111 billing entries for the period stated for treatment of CDCR prisoners by Dr. Ravi."  (Doc. No. 64-2 at 3 ¶ 17).  However, Defendant disputes whether the records cited by Plaintiff demonstrate that Ravi had 110 appointments with CDCR inmates during that period or rather that 110 (or 111) billing entries were made for a smaller number of appointments during that time.  (*Id.*).

- On September 20, 2018, while physically located at Mercy Hospital in Bakersfield, Dr. Ravi treated nine CDCR prisoners including Plaintiff.  (Doc. No. 62-2 at 3).  Defendant disputes this. (Doc. No. 64-2 at 3 ¶ 19).

- In 2018, Dr. Ravi was under no contract with the state or any hospital that required him to provide medical care for inmates.  (*Id.* at 2 ¶ 6).  Plaintiff disputes this in part, stating that "[w]hile Dr. Ravi did not have a direct contract, the treatment he provided to Mr. Rios was paid for by the CDCR, so he had an indirect contract or agreement with CDCR."  (Doc. No. 62-1 at 2).

- Defendant states that Dr. Ravi's care and treatment of all patients, including any prisoners which may have been referred for treatment at Mercy Hospital, were determined by his own training, experience, and medical judgment independent of

10

any direction or control by CDCR. (*Id.* ¶ 7). Plaintiff disputes this in part, stating that "[w]hile Dr. Ravi exercised his own medical judgment, CDCR prescribed which patients he would treat, and for service what each referral was for. Pursuant to CDCR's contract with Mercy Hospital, Dr. Ravi had to follow specific procedures regarding telemedicine including the requirement that he conduct telemedicine visits from his place of business. Mercy Hospital policies also placed strict requirements on Dr. Ravi regarding communication and interaction with prisoner patients and their families." (Doc. No. 62-1 at 3).

### d. Whether Defendant Ravi Was Acting Under Color of State Law When He Provided a Consultation to Plaintiff Rios

As a general matter, "[p]rivate hospitals, doctors, and nurses are not . . . considered state actors amenable to suit under § 1983." *Sliwinski v. Maysent*, No. 3:18-cv-2653-CAB, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019) (citing *Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977)). Courts have, however, found state action when a state has delegated its obligation to provide medical care to inmates to a private hospital or medical provider, *McKenzie v. Jorizzo*, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) (collecting cases), when a private hospital or physician enters into a contract with the state to provide medical care to inmates, *McKinney v. Cty. of Imperial*, 2019 WL 384323, at *3 n.6 (C.D. Cal. Jan. 3, 2019), when a private party has contracted with the state to provide medical care to indigent citizens, *Sliwinski*, 2019 WL 581720, at *4 (citing *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)), and when "a publicly financed hospital . . . leased its management and operation to a private corporation." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1150 (9th Cir. 2011) (citation omitted).

The Ninth Circuit has recognized at least four different general tests in identifying state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citation omitted). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* "Whether these different tests are actually different in operation or simply different

11

1 ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a

2 situation need not be resolved here." *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 939

3 (1982).

4      "The public function test is satisfied only on a showing that the function at issue is 'both

5 traditionally and exclusively governmental.'" *Kirtley*, 326 F.3d at 1093 (quoting *Lee v. Katz*, 276

6 F.3d 550, 555 (9th Cir. 2002)).  The close nexus and joint action tests may be satisfied where the

7 court finds "a sufficiently close nexus between the state and the private actor 'so that the action of

8 the latter may be fairly treated as that of the State itself,'" or where the State has "so far

9 insinuated into a position of interdependence with the [private party] that it was a joint participant

10 in the enterprise." *Jensen*, 222 F.3d at 575–58 (quoting *Jackson v. Metro. Edison Co*., 419 U.S.

11 345, 350, 357–58 (1974)).  Governmental compulsion or coercion may exist where the State "has

12 exercised coercive power or has provided such significant encouragement, either overt or covert,

13 that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991,

14 1004 (1982).

15      Since the state bears "an affirmative obligation to provide adequate medical care" to its

16 inmates, a private physician who "is authorized and obliged to treat prison inmates" acts under

17 color of state law for purposes of § 1983.  *West v. Atkins,* 487 U.S. 42, 56 (1988).  Thus, medical

18 providers who are employed by the state or county or are under contract to provide medical

19 services to an inmate population are state actors.  *See, e.g., West*, 487 U.S. at 42; *see also Carl v.

20 Muskegon Cnty*., 763 F.3d 592, 596–97 (6th Cir. 2014) (psychiatrist employed by county to

21 provide mental health services to pretrial detainees was state actor).  It is equally well-settled that

22 physicians, nurses, and hospitals are not state actors merely because they provide one-off

23 emergency medical care to an inmate.  *See Stratton v. Buck*, 498 F. App'x 674, 676 (9th Cir.

24 2012) (private physician who provided emergency care to an inmate not a state actor, in part

25 because she had no choice whether to treat him, and noting that "there is no Ninth Circuit case

26 law holding that emergency medical care is a traditionally and exclusively governmental

27 function"); *Clewis v. California Prison Health Care Servs*., 2013 WL 2482521, at *6 (E.D. Cal.

28 June 10, 2013) (private hospital not a state actor where it provided emergency care to an inmate);

1   *see also, e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir.2009) (noting

2   that "private organizations and their employees that have only an incidental and transitory

3   relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the

4   responsibility of acting for the state and assuming the state's responsibility for incarcerated

5   persons.  For instance, an emergency medical system that has a preexisting obligation to serve all

6   persons who present themselves for emergency treatment hardly can be said to have entered into a

7   specific voluntary undertaking to assume the state's special responsibility to incarcerated

8   persons"); *Katorie v. Dunham*, 108 F. App'x 694, 698–699 (3rd Cir.2004) (emergency

9   room physician who treated arrestee and ordered a blood test to check for hypoglycemia, with no

10  participation by state officials, was not a state actor).

11          The key inquiry is whether the defendant has "exercised power 'possessed by virtue of

12  state law and made possible only because the wrongdoer is clothed with the authority of state

13  law.'" *Id*. at 49. (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  To determine

14  whether a private physician acts under state law, the emphasis is on the <u>function</u> performed by the

15  physician, as opposed to the physician's contractual relationship:

16          It is the physician's *function* while working for the State, not the
           amount of time he spends in the performance of those duties or the
17          fact that he may be employed by others to perform similar duties,
           that determines whether he is acting under color of state law.
18

19  *West* at 56-57 (emphasis added) (footnote omitted).

20          Here, the question before the Court here is whether Defendant Ravi by providing a single

21  telemedicine gastroenterological consultation to a CDCR inmate, despite not being under any

22  contract with CDCR or with Mercy Hospital to provide medical care to inmates, can be deemed

23  to have acted under color of state law.  The undersigned finds that there are disputed issues of

24  material fact that preclude this Court from granting summary judgment on this issue.

25          With respect to medical providers who provide non-emergency care and do not have a

26  contractual or employment relationship with the state, different circuits take divergent views.  The

27  Fourth Circuit, for example, held in *Conner v. Donnelly* that a private orthopedic specialist,

28  having no employment or contractual relationship with the state corrections system, was acting

1    under color of state law when he saw an inmate at a private facility four times over the course of

2    six months.  42 F.3d 220, 227 (4th Cir. 1994).  The court there also overruled a lower court case,

3    *Calvert v. Hun*, 798 F. Supp. 1226 (N.D.W. Va.1992), and held that a physical therapist who had

4    been referred an inmate patient but was not under any contract with the state, was in fact a state

5    actor.  42 F.3d at 227.  The *Conner* court stated that because "the physical therapist was

6    employed by the state to fulfill the state's constitutional obligations to its prisoners" he was a

7    state actor even though he was neither employed by, nor under contract with the state.  *Conner*,

8    42 F.3d at 227.  The court concluded that "a private physician who treats a prisoner upon referral

9    by the state, and who knows that the patient is a prisoner, voluntarily assumes the state's

10   obligation to provide medical care to inmates." *Id*. at 226.

11          In contrast, the Ninth Circuit courts have taken a narrower view of what medical services

12   are deemed to constitute state action.  For example, in *Lowe v. McGuinness*, a CDCR prisoner

13   was seen several times by a private neurosurgeon at a private Bakersfield hospital for treatment of

14   his degenerative disc disease.  2012 WL 1037456, at *1 (E.D. Cal. Mar. 27, 2012).  The

15   neurosurgeon was not under contract with CDCR, although both of the hospitals where he had

16   privileges did have contracts with CDCR.  *Lowe*, 2012 WL 1037456, at *4.  At summary

17   judgment, the defendant physician argued he was not a state actor and the court agreed, because:

18   (1) the doctor was not under any contract with the state, (2) he never treated Plaintiff at any

19   CDCR location or prison; (3) there was no evidence that the doctor was aware that the hospitals

20   had entered into contracts with CDCR or if he did, that he became a party to either contract.  *Id*. at

21   *5.  The court also observed, "[t]hough it appears that he accepted a referral from the hospital

22   and/or the CDCR to provide neurological consultation and treatment, there is no other indication

23   that Dr. Rahamifar had any other contact with the CDCR or that he provided any regular medical

24   treatment to any other inmates."  *Id.*  In other words, the court found it dispositive that the

25   neurosurgeon's treatment of the inmate-patient appeared to be an isolated instance and the care

26   was provided exclusively in a private medical setting.

27          Similarly, in *Sanchez v. Smith*, the district court found that a surgeon who was neither

28   employed by nor under contract with the Washington State Department of Corrections, was not a

14

1  state actor when he accepted a referral from a prison and provided care exclusively in a private

2  medical facility.  2006 WL 1515657, at *2 (W.D. Wash. May 24, 2006).  The *Sanchez* court

3  distinguished *West* noting in *West* that the defendant physician's duties were extensive[5] such that

4  he was effectively an "'institutional physician' who was obligated to cooperate with, abide by the

5  regulations applicable to, and coordinate his medical work with the North Carolina State

6  Department of Corrections."  *Sanchez,* 2006 WL 1515657, at *1 (citing *West*, 487 U.S. at 51-52).

7      In *West*, the Court also noted that "the context in which [Atkins] performs these services

8  for the State (quite apart from the source of remuneration) distinguishes the relationship between

9  respondent and West from the ordinary physician-patient relationship."  *West* at 56 n. 15.  In

10  particular,

11  
12      Respondent carried out his duties at the state prison within the
        prison hospital.  That correctional setting, specifically designed to
        be removed from the community, inevitably affects the exercise of
13      professional judgment.  Unlike the situation confronting free
        patients, the nonmedical functions of prison life inevitably
14      influence the nature, timing, and form of medical care provided to
        inmates such as West.  By regulation, matters of medical health
15      involving clinical judgment are the prison physician's "sole
        province." . . . These same regulations, however, require respondent
16      to provide medical services "in keeping with the security
        regulations of the facility."

17  *Id.*

18      Here, Dr. Ravi's medical practice, which involved treating Plaintiff as well as apparently

19  other CDCR inmates, does not lend itself to a straightforward application of *West* and the other

20  above authorities.  On the one hand, it is uncontested that he was neither employed by, nor under

21  contract[6] to the state to provide medical services to inmates.  Under a conventional analysis this

---

[5] Atkins was required to ". . . provide two orthopedic clinics per week; to see all orthopedic and
neurological referrals; to perform orthopedic surgery as scheduled; to conduct rounds as often as necessary
for his surgical and other orthopedic patients; to coordinate with the Physical Therapy Department; to
request the assistance of neurosurgical consultants on spinal surgical cases; and to provide emergency on-
call orthopedic services 24 hours per day.  His contract required him to furnish two days of professional
service each week in fulfillment of these duties . . . Atkins also had supervisory authority over Department
of Correction nurses and physician's assistants, who were subject to his orders."  *West*, 487 U.S. at 44 n. 1.

[6] Plaintiff contends that Ravi was under an "indirect contract" to provide medical services to CDCR
because CDCR paid for Plaintiff's care, and Ravi was in turn paid by an insurance company for the
treatment he provided to Plaintiff.  Under Plaintiff's argument, any medical provider who treated an
inmate and was compensated for doing so would be a state actor, which would ignore the nuanced analysis
set forth in *West* and related case law.  Moreover, an "indirect contract" is not a concept recognized in

1   would suggest he was not a state actor.  While Ravi himself did not physically deliver medical

2   care in a correctional setting, he provided the consultation to Plaintiff while Rios was physically

3   located at a CDCR facility and thus Plaintiff's incarceration "influence[d] the nature, timing, and

4   form of medical care" which was provided "in keeping with the security regulations of the

5   facility." *West*, 487 U.S. at 56 n. 15.  This tends to suggest that CDCR had delegated to him their

6   constitutional duty to provide adequate medical care for Plaintiff[7].  *See West*, 487 U.S. 42, 56,

7   108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40 (1988).  Moreover, unlike the neurosurgeon in *Lowe*, the

8   uncontested evidence[8] indicates that Ravi "provided . . . regular medical treatment to . . . other

9   inmates."  *Lowe*, 2012 WL 1037456.  This weighs in favor of a finding that he was a state actor.

10          On the other hand, Dr. Ravi's care was quite limited; he saw Rios only once over video

11   for an unspecified amount of time, never physically examined Plaintiff, and had no authority to

12   control Plaintiff's follow-up care.  While "[t]he amount of time a physician expends exercising

13   his duties does not resolve the state actor question," *Carl*, 763 F.3d at 596, the Court cannot easily

14   conclude that Defendant Ravi "worked as a physician . . . fully vested with state authority to

15   fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law,

16   to provide essential medical care to those the State ha[s] incarcerated."  *West*, 487 U.S. at 57.

17          Defendant raises numerous admissibility objections to the evidence attached by Plaintiff

18   to his Opposition.  (*See generally* Doc. No. 64-2).  Many of these objections are well-founded,

19   however at summary judgment, "the evidence of the non-movant is to be believed, and all

20   justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc*., 477 U.S.

21   242, 255 (1986).  The evidence offered by Plaintiff raises factual questions regarding the extent of

22   Dr. Ravi's treatment of CDCR patients, and the level of coordination between Ravi and CDCR.

23   Ultimately, the Court finds Defendant Ravi's status to be a very close question of fact, and

---

25   contract law and the Court declines to recognize it as such.

26   [7] The Court is not persuaded by Plaintiff's claim that the Physician Request for Services ("PRS") (Doc. No. 23 at 3) demonstrates that "CDCR and Dr. Ravi were in direct communication when it came to the medical treatment of Plaintiff Rios."  (Doc. No. 62 at 3).  The PRS appears to be an internal CDCR

27   document and there is no evidence that it was ever seen by Dr. Ravi.  (Doc. No. 64-2 at 4 ¶¶ 20-21.)

28   [8] Defendant does not dispute that he treated other inmates but disputes that the number of billing entries corresponds to the number of inmates treated.

1   therefore not one appropriately resolved at summary judgment.  *See Wheeler v. Mui*, 2017 WL

2   1273799 (E.D. Cal. 2017) (denying physician's motion for summary judgment on color of state

3   law grounds).  A reasonable jury could conclude, based on the correctional setting in which

4   Plaintiff was treated and Ravi's frequent treatment of other CDCR patients, that Ravi was acting

5   under color of state law when he treated Plaintiff on September 20, 2018.  Thus, the undersigned

6   finds a genuine dispute of material fact on the issue and will recommend Defendant Ravi's

7   Motion for Summary Judgment be denied.  For the same reason, the undersigned will decline to

8   adopt Plaintiff's recommendation that the Court "enter a sua sponte order granting partial

9   summary judgment to Plaintiff that Dr. Ravi acted under color of state law."  The undersigned

10  makes no such finding.  Rather, the undersigned finds the question in these circumstances to be a

11  question of fact for the jury and will recommend the district court deny Defendant's limited

12  Motion for Summary Judgment on that ground.

13                 **DEFENDANT'S MOTION TO DISMISS[9]**

14          The Court now turns to the two remaining grounds for dismissal set forth in Defendant

15  Ravi's MTD.  First, Ravi argues the TAC fails to allege facts sufficient to support a finding of

16  deliberate medical indifference against him.  (Doc. No. 47-1 at 16-21).  Specifically, Defendant

17  asserts that he ordered appropriate diagnostic testing, which ultimately led to treatment of

18  Plaintiff's gallbladder.  (*Id*. at 17).  Defendant contends a physician's failure or deliberate

19  decision not to prescribe antibiotics constitutes at most a difference of medical opinion or a claim

20  for malpractice or negligence, but not deliberate indifference to a serious medical condition. (*Id*.).

21  Thus, Defendant argues that the facts alleged reflect a mere difference of medical opinion.  (*Id*. at

22  19-21).  In support, Defendant attaches copies of his progress notes from Plaintiff's visit to MHB

23  on September 20, 2018.[10]  (Doc. Nos. 47-2, 47-3).  Defendant argues that the notes reflect that he

24  ordered a "detailed plan of care" that was appropriate given Plaintiff's symptoms and

25  presentation.  (Doc. No. 47-1 at 17-18).  Second, Defendant argues that because Plaintiff fails to

26

27  _____

    [9] The Court recited the applicable procedural history and factual background to Defendant's MTD above
    and does not repeat them here.

28  [10] These notes are the subject of Defendant's request for judicial notice, discussed further below.

                              17

state a cognizable federal claim against him, the Court lacks jurisdiction over any remaining state claims, which he argues separately in the alternative should be dismissed as time barred.  (*Id*. at 24-25).

As to Count III, the state law medical negligence claim, Defendant argues that under the applicable statute of limitations in California the last day for Plaintiff to file his claim was March 17, 2022.  (*Id*. at 22).  Because the TAC was not filed until September 30, 2022, Defendant Ravi asserts the stat law negligence claim is time-barred.  (*Id*.).  Although Plaintiff previously named Dr. Ravi in the FAC, he effectively dismissed Ravi by not renaming him in the SAC and did not re-name him as a Defendant until after the statute of limitations had passed.  (*Id*. at 22-23).  Defendant thus asserts Plaintiff's state medical negligence claim against Dr. Ravi is time-barred.  (*Id*.).

As to Plaintiff's claims for punitive damages, Defendant argues Plaintiff failed to specifically plead the requisite facts to support punitive damages, including proof of an "intent to injure or despicable conduct carried out with a willful and conscious disregard of a plaintiff's safety."  (*Id*. at 27) (citing Cal. Civil Code § 3294).  Defendant also asserts that Plaintiff fails to cite any authority justifying attorney's fees for his state law negligence claim.  (*Id*. at 28).

Plaintiff's Opposition

In opposition, Plaintiff maintains that Defendant is properly sued as a state actor under 42 U.S.C. § 1983.  (Doc. No. 50 at 6-8).  Next, Plaintiff reiterates many of his factual allegations supporting his deliberate medical indifference claim against Ravi and seeks to distinguish the cases cited by Defendant.  (*Id*. at 8-10).  As to Defendant's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, because Plaintiff maintains that he states a viable 42 U.S.C. § 1983 claim, he contends that dismissal under Rule 12(b)(1) is improper and that he may likewise seek attorney's fees under 42 U.S.C. § 1988(b).  (*Id*. at 12).

Plaintiff disputes that his state law claim for medical negligence is time-barred, pointing to case law providing indirect support for that position, and suggesting the court should apply the relation back doctrine with leniency.  (*Id*. at 11).

////

18

1    Defendant's Reply

2         In reply, Defendant reiterates many of the arguments presented in his motion.  Defendant

3    emphasizes that his lack of knowledge as to whether Plaintiff was taking antibiotics "negates the

4    subjective element of deliberate indifference" and contends this is fatal to Plaintiff's Count II.

5    (Doc. No. 51 at 3).  Defendant also points to case law holding that "negligent errors or omissions

6    such as failing to take a medical history and failing to diagnose an injury cannot, as a matter of

7    law, support the inference that a defendant medical practitioner acted purposefully with deliberate

8    indifference."  (*Id*. at 4) (*citing Guy v. Cty. of San Diego*, 2008 U.S. Dist. LEXIS 13877, at *17-

9    18 (S.D. Cal. Feb. 22, 2008) (internal citation omitted).

10        With regards to Plaintiff's argument disputing that his medical negligence claim is time-

11   barred, Defendant emphasizes that voluntarily dismissal does not toll the statute of limitations,

12   and that Plaintiff's only option once the statute of limitations ran was to file a new action against

13   Defendant.  (*Id*. at 7-8).  Nor does Plaintiff's TAC, Defendant argues, relate back to the original

14   complaint, thus relation back under Rule 15(c)(1)(C) is unavailable.  (*Id*. at 9-11).

15        Finally, as to Plaintiff's request for punitive damages, Defendant again points out that

16   Plaintiff has not petitioned the Court for damages under Cal. Code. Civ. Proc. § 425.13, nor has

17   he alleged facts sufficient to support such a petition, and thus the Court has no basis for granting

18   the request.  (*Id*. at 11).

19                    **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

20        In support of his motion to dismiss, Defendant Ravi submits a request for judicial notice.

21   (Doc. No. 47-3).  Defendant attaches and asks the Court to judicially notice his declaration and a

22   copy of the progress notes he made after Plaintiff's September 20, 2018 consultation with Ravi at

23   MHB, which were previously admitted as records from the related Case No. 2:20-cv-00146.

24   (Doc. No. 47-2).

25        Plaintiff's Opposition

26        Plaintiff argues that the request for judicial notice should be denied because a court is

27   generally limited to reviewing the operative complaint in ruling on a motion to dismiss, and

28   medical records do not fit within the narrow exceptions to this general rule.  (Doc. No. 50 at 5-6).

                                                    19

1   Moreover, for the Court to consider Defendant's "self-serving purported expert testimony"

2   without giving Plaintiff an opportunity to present his own medical expert would be improper.  (*Id.*

3   at 6).

4       Defendant's Reply

5       Defendant responds that because Plaintiff's TAC "relies on and refers to" Defendant's

6   progress notes, they are properly incorporated into the pleadings.  (Doc. No. 51 at 5).  Defendant

7   points to one paragraph of the TAC which references the progress notes.  (*Id.*).  Further, because

8   Plaintiff does not dispute the authenticity or accuracy of the notes, he has no basis for challenging

9   their incorporation to the pleadings.  (*Id.* at 5-6).

10          **APPLICABLE LAW AND ANALYSIS**

11      **A.  Defendant's Request for Judicial Notice** (Doc. No. 47-3)

12       Defendant requests the Court take judicial notice of the following two documents, which

13  were previously filed with Defendant Ravi's January 13, 2023 motion to dismiss in Case No.

14  2:20-cv-00146, prior to the order consolidating the two cases:

15          1.  The January 11, 2023 Declaration of Nandakumar Ravi.

16          2.  September 20, 2018 Consultation Report from Plaintiff's Appointment with Dr.

17              Ravi.

18       As a general rule, "a district court may not consider any material beyond the pleadings in

19  ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) (citation

20  omitted) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th

21  Cir. 2002).  Rule 12(b)(6) expressly provides that when:

22          matters outside the pleading are presented to and not excluded by
            the court, the motion shall be treated as one for summary judgment
23          and disposed of as provided in Rule 56, and all parties shall be
            given reasonable opportunity to present all material made pertinent
24          to such a motion by Rule 56.

25  Fed. R. Civ. P. 12(b)(6).  There are, however, two exceptions to the requirement that

26  consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion.

27       First, a court may consider "material which is properly submitted as part of the complaint"

28  on a motion to dismiss without converting the motion to dismiss into a motion for summary

1    judgment.  *Branch*, 14 F.3d at 453 (citation omitted).  If the documents are not physically

2    attached to the complaint, they may be considered if the documents' "authenticity . . . is not

3    contested" and "the plaintiff's complaint necessarily relies" on them.  *Parrino v. FHP, Inc*., 146

4    F.3d 699, 705–06 (9th Cir.1998).

5         Second, Federal Rule of Evidence 201 permits a court to take judicial notice of facts that

6    are "not subject to reasonable dispute" because they are either "generally known within the trial

7    court's territorial jurisdiction," or they "can be accurately and readily determined from sources

8    whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

9         Medical records are generally not considered to be adjudicative facts appropriate for

10   judicial notice.  *See Sigler v. Am. Honda Motor Co*., 532 F.3d 469, 476–77 (6th Cir. 2008).  Here,

11   the exhibits are records submitted as exhibits to a pleading in another court proceeding, allowing

12   the medical records to be treated as public court records.  *See Harris v. County of Orange,* 682

13   F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public

14   record, including documents on file in federal or state courts." (citations omitted)).  As court

15   records are appropriate for judicial notice, the Court grants Defendant's request for judicial notice

16   as to the existence of the attached records.  However, because the Court may not take judicial

17   notice of "disputed facts stated in public records," the Court does not take judicial notice of the

18   facts and opinions contained in these records.  *Lee*, 250 F.3d at 690.

19        **B.  Motion to Dismiss**

20             1.  Legal Standard

21        A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the

22   legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

23   2011).  Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal

24   theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Id*.; *see also*

25   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the

26   complaint must have sufficient facts to state a facially plausible claim to relief).  In deciding a

27   motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the

28   complaint and determines whether the factual allegations are sufficient to state a right to relief

above the speculative level.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them).  "Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted."  *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019) (citation omitted).  However, where leave to amend would be futile, because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," leave to amend may be denied.  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  The Court may not consider materials outside of the complaint and the pleadings.  *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F. 3d 1077, 1083 (9th Cir. 2001).  But the Court may consider "materials of which the court may take judicial notice."  *Barron v. Reich*, 13 F. 3d 1370, 1377 (9th Cir. 1994).

In the Ninth Circuit, "a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court."  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983) (holding that district court properly treated motion as motion to dismiss, despite presence of affidavits, where there was no indication of the court's reliance on outside materials and the court expressly stated that it was dismissing for failure to state a claim upon which relief could be granted); *see Keams v. Temple Technical Institute, Inc*., 110 F.3d 44, 46 (9th Cir. 1997) ("12(b)(6) motion need not be converted into a motion for summary judgment when matters outside the pleading are introduced, provided that 'nothing in the record suggest[s] reliance' on those extraneous materials"). Rather, a motion to dismiss supplemented by a party's extraneous materials is regarded as one for summary judgment only when the court "acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration."  *Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003).  No such action is taken in this case.  As noted above, while the Court grants in part Defendant's Request for Judicial Notice, the Court will not consider the factual assertions or

22

1   opinions contained in the medical records attached to Plaintiff's Request. (*See supra* at 11-12).

2   The undersigned thus declines to automatically convert Defendant's motion to dismiss into a

3   motion for summary judgment.

4          2.   Analysis

5         **a.   Deliberate Indifference Under the Eighth Amendment**

6         Deliberate indifference to the serious medical needs of an incarcerated person constitutes

7   cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble,* 429

8   U.S. 97, 104 (1976).  To maintain an Eighth Amendment claim premised on prison medical

9   treatment, the prisoner must show that officials were deliberately indifferent to his medical needs.

10  A finding of "deliberate indifference" involves an examination of two elements: the seriousness

11  of the plaintiff's medical need (determined objectively) and the nature of the defendant's response

12  (determined by defendant's subjective state of mind).  *See McGuckin v. Smith,* 974 F.2d 1050,

13  1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d

14  1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious" medical need exists if

15  the failure to treat "could result in further significant injury" or the "unnecessary and wanton

16  infliction of pain."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  On the subjective

17  prong, a prison official must know of and disregard a serious risk of harm.  *Farmer v. Brennan,*

18  511 U.S. 825, 837 (1994).  Such indifference may appear when a prison official intentionally

19  denies or delays care, or intentionally interferes with treatment once prescribed.  *Estelle,* 429 U.S.

20  at 104-05.

21        If, however, the official failed to recognize a risk to the plaintiff—that is, the official

22  "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth

23  Amendment.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in

24  original).  That is because deliberate indifference is a higher standard than medical malpractice.

25  Thus, a difference of opinion between medical professionals—or between the plaintiff and

26  defendant—generally does not amount to deliberate indifference.  *See Toguchi v. Chung*, 391

27  F.3d 1051, 1057 (9th Cir. 2004).  An argument that more should have been done to diagnose or

28  treat a condition generally reflects such differences of opinion and not deliberate indifference.

*Estelle*, 429 U.S. at 107.  To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health.  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).  Misdiagnosis alone is not a basis for a claim of deliberate medical indifference.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).  A delay in treatment, without more, is likewise insufficient to state a claim.  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists.  *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).  A plaintiff must also demonstrate harm from the official's conduct.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  And the defendant's actions must have been both an actual and proximate cause of this harm.  *Lemire*, 726 F.3d at 1074.

The undersigned finds that Plaintiff's TAC does adequately state an Eighth Amendment deliberate medical indifference claim as to Defendant Ravi.  Accepting Plaintiff's alleged facts as true, as the Court must do at the motion to dismiss stage, Plaintiff suffered from an H. Pylori infection, a condition that caused him serious pain and posed a risk of causing further serious medical problems.  (Doc. No. 50 at 8).  Thus, the TAC sets forth facts sufficient to satisfy the first prong of the deliberate medical indifference analysis.  Second, the TAC alleges that Defendant Ravi knew of Plaintiff's H. Pylori infection but failed to include treatment for the infection, to discuss Plaintiff's symptoms related to the infection, or prescribe Plaintiff with antibiotics.  (*Id*. at 8-9).  Thus, the TAC alleges Defendant Ravi knew of the serious medical condition but nevertheless failed to take any action to treat it.  While Defendant contends that his treatment plan was appropriate for Plaintiff's symptoms and ultimately led to the correct treatment for Plaintiff's condition, (Doc. No. 47-1 at 17), Plaintiff's allegations, taken as true, may support a finding that Defendant's actions were "medically unacceptable under the circumstances" and were chosen "in

1    conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d

2    330, 332 (9th Cir. 1996).  Thus, the undersigned recommends the district court deny the MTD as

3    to whether the TAC adequately states an Eight Amendment deliberate indifference claim at this

4    stage of the proceedings.

5    **b.  Lack of Subject Matter Jurisdiction**

6    Finally, the Court turns to Plaintiff's third argument, that this federal case should be

7    dismissed under Rule 12(b)(1) due to lack of subject matter jurisdiction.  Because the Court finds

8    that TAC states a plausible 42 U.S.C. § 1983 claim, as set forth above, the Court properly has

9    subject matter jurisdiction over this action.  Consequently, the undersigned recommends the

10   district court deny Defendant's Rule 12(b)(1) motion on this ground.

11   **c.  Statute of Limitations as to State Medical Negligence Claim**

12   Defendant argues that Plaintiff's state claim for medical negligence against him should be

13   dismissed because the TAC was filed beyond the statute of limitations.  For reasons set forth

14   below, the undersigned agrees.

15   1.  <u>Legal Standard</u>

16   "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations

17   for personal injury actions, along with the forum state's law regarding tolling, including equitable

18   tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*,

19   393 F.3d 918, 927 (9th Cir. 2004).  The applicable statute of limitations under California law for

20   medical negligence is one year.  Cal. Code Civ. Proc. § 340.5.  However, if a plaintiff "is, at the

21   time the cause of action accrued, imprisoned on a criminal charge, or in execution under the

22   sentence of a criminal court for a term less than for life, the time of that disability is not a part of

23   the time limited for the commencement of the action, not to exceed two years."  Cal. Civ. Proc.

24   Code § 352.1(a).  "[T]he period of incarceration must be 'for a term less than for life' in order for

25   a prisoner to qualify for tolling."  *Jones*, 393 F.3d at 927 n.5.

26   Because the limitations period derives from state law, this court must consider both

27   federal and state law to determine which affords "the more permissive" relation back standard.

28   *Butler v. Nat'l Cmty. Renaissance of Cal*., 766 F.3d 1191, 1201 (9th Cir. 2014) (citing Fed. R.

1  Civ. P. 15(c)(1)).

2         Under Rule 15 of the Federal Rules of Civil Procedure, the following conditions must be

3  met for an amended complaint to relate back to the date of the original complaint: "'(1) the basic

4  claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be

5  brought in must have received such notice that it will not be prejudiced in maintaining its defense;

6  [and] (3) that party must or should have known that, but for a mistake concerning identity, the

7  action would have been brought against it.'" *Butler*, 766 F.3d at 1202 (quotation omitted); Fed.

8  R. Civ. P. 15(c)(1)(C).  The second and third requirements, notice and knowledge, must have

9  been met within the service period provided under Rule 4(m), which is 90 days after the

10  complaint is filed. Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m); *Butler*, 766 F.3d at 1202.

11         Rule 15(c)(1)(A) "incorporates the relation back rules of the law of a state when that

12  state's law provides the applicable statute of limitations and is more lenient." *Butler v. Nat'l*

13  *Cmty. Renaissance*, 766 F.3d 1191, 1200 (9th Cir. 2014). Under California law, "an amended

14  complaint that adds a new defendant does not relate back to the date of filing the original

15  complaint and the statute of limitations is applied as of the date the amended complaint is filed,"

16  *Woo v. Super. Ct*., 75 Cal. App. 4th 169, 176 (1999), unless "an amendment does not add a 'new'

17  defendant, but simply corrects a misnomer by which an 'old' defendant was sued," *Hawkins v.*

18  *Pac. Coast Bldg. Prods., Inc*., 124 Cal. App. 4th 1497, 1503 (2004) (as modified); see also

19  *Anderson v. Allstate Ins. Co*., 630 F.2d 677, 683 (9th Cir. 1980) ("Under California law, if a

20  defendant is added to an amended complaint as a new defendant, and not as a Doe defendant, the

21  amendment does not relate back to the time of the original complaint.").  Thus, California's

22  relation-back rules are not "more lenient" than those in Rule 15(c) and the federal rules control.

23  *Tate v. United States*, 2019 WL 6799107, at *4 (C.D. Cal. Sept. 18, 2019), *report and*

24  *recommendation adopted*, 2019 WL 6790686 (C.D. Cal. Nov. 1, 2019).

25                              2.  <u>Analysis</u>

26         Here, the incident giving rise to Plaintiff's complaint took place on September 20, 2018.

27  It is uncontested that Plaintiff is imprisoned for a term of less than life.  Thus, applying the one-

28  year statute of limitation for medical negligence and adding the two years of tolling under Cal.

Civ. Proc. Code § 352.1(a), the statute of limitations for Plaintiff's medical negligence claim ran on September 21, 2021.  As Defendant notes, Emergency Rule 9 tolled civil statutes of limitations that exceed 180 days from April 6, 2020 to October 1, 2020, an extension of 178 days.  Cal. Rules of Court, App. I, Emergency Rule 9(a) (adopted April 6, 2020, amended effective May 29, 2020).  Adding the 178 days, Plaintiff's statute of limitations thus ran on March 17, 2022.  Plaintiff's TAC was filed on September 29, 2022 and was therefore his state law negligence claim appears untimely.

Plaintiff argues that under the relation back doctrine set forth in Fed. R. Civ. P. 15(c)(1)(B), he may add claims in an amended complaint so long as they "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  (Doc. No. 50 at 10-11) (citing *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).)  However, the rule Plaintiff cites only sets forth part of the federal rule applicable to addition of parties.

Rule 15(c)(1)(C) governs the addition or substitution of parties, and states:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back; [or] ....
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*See* Fed. R. Civ. P. 15(c)(1)(A)&(C).  Rule 15(c)(1)(B), which is expressly incorporated into Rule 15(c)(1)(C)'s requirements, is satisfied where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  Thus, an amended complaint that seeks to add new defendants will relate back to the date of the original complaint if either: (1) the amended complaint relates back under applicable state law; or (2) the amended complaint satisfies the

1  requirements of Rule 15(c)(1)(C).  *Jackson v. Med. Bd. of California*, 2012 WL 13019955, at *7

2  (C.D. Cal. Apr. 19, 2012).

3        The Court is only aware of one California state appellate decision addressing the question

4  presented, *Troche v. Daley*, 217 Cal. App. 3d 403, 412 (Ct. App. 1990), which holds that where a

5  plaintiff voluntarily dismisses a defendant during the statute of limitations period, then re-names

6  that defendant after the statute of limitations has run, the claim is barred.  The *Troche* court found

7  that plaintiff's initial dismissal of the defendant "had the effect of removing him from the lawsuit

8  as though no action had been filed against him."  *Id.* (citation omitted).  Thereafter, plaintiff "was

9  free to later rename [defendant] in the lawsuit provided she acted within the statute of

10  limitations."  *Id.*  But because the plaintiff failed to timely do so, the claim was barred and could

11  not relate back to the initial complaint.  *Id.*

12        Turning to the federal rules, Plaintiff bears the burden of establishing that the

13  requirements for relation back under Rule 15(c) have been satisfied.  *Johnson v. Evans*, 2009 WL

14  3049000, *4, (E.D. Cal. Sept. 17, 2009); *In re Alstom S.A.*, 406 F.Supp.2d 402, 430 (S.D.N.Y.

15  2005) (citing *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)); *Cabrera v. Lawlor*, 252

16  F.R.D. 120, 123 (D. Conn. 2008) (plaintiff's burden to establish requirements for relation back).

17  Here, Plaintiff has not cited the required elements for relation back under Rule 15(c)(1)(C), nor

18  set forth why he has met them in this case.  *Telesaurus VPC, LLC v. Power*, 2011 WL 5024239,

19  at *4 (D. Ariz. Oct. 21, 2011) ("the Supreme Court has made clear that Rule 15(c) establishes

20  elements, the satisfaction of which necessarily merits leave to amend; the district courts do not

21  have discretion as they do under Rule 15(a)") (*citing Krupski v. Costa Crociere S. p. A.*, 560 U.S.

22  538, 549 (2010).  "Treating those elements as no more than factors to weigh would undercut the

23  Rule's non-discretionary nature."  *Id.*

24        Plaintiff has arguably satisfied Rule 15(c)(1)(B), because the TAC "asserts a claim or

25  defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set

26  out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The original complaint refers to the

27  negligent failure by various physicians to treat Plaintiff's H. Pylori infection, which is the

28  gravamen of Plaintiff's TAC.

However, Plaintiff has not articulated a basis for finding that Defendant Ravi has met the next two elements, i.e. that he (2) "received such notice of the action that [he] will not be prejudiced in defending on the merits;" and (3) that Ravi "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(A)-(C).  As to the third element, the fact that Plaintiff effectively dismissed Ravi in the SAC tends to show that Ravi did not know, nor should have known, that he would be re-named in the action, "but for a mistake concerning the proper party's identity."  The most reasonable inference to be drawn from this fact is not that Plaintiff was mistaken as to Ravi's "status or role in the events giving rise to the claim at issue," *Krupski*, 560 U.S. 538, 549 (2010).  To the contrary, the logical inference is that Plaintiff made a strategic decision not to pursue his claims against Ravi, and instead chose to pursue his claims against Dr. Chinyere Nyenke alone.  *See Jackson v. Med. Bd. of California*, 2012 WL 13019955, at *10–11 (C.D. Cal. Apr. 19, 2012); s*ee also Wilkins-Jones v. County of Alameda*, 2011 WL 3652495, *13 (N.D. Cal. Aug. 19, 2011) (holding the plaintiff's amended complaint did not relate back, where the newly-added defendants "could not have known that their exclusion from the lawsuit was the result of error rather than strategic calculation . . . . [T]he [original] complaint refers to numerous purported County employees and policies created by those employees, yet names only the County [as a defendant]."); *Krupski*, 560 U.S. at 549 ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity").

Thus, because Plaintiff fails to satisfy the requirements for relation back under either California law or the Federal rules, the undersigned recommends the District Court grant Defendant's MTD as to Plaintiff's medical negligence claim as barred by the statute of limitations.

Accordingly, for the reasons set forth above, it is hereby **ORDERED**:

1. Defendant's Request for Judicial Notice (Doc. No. 47-3) is **GRANTED** to the extent set forth herein.

2. Plaintiff's Request for Judicial Notice (Doc. No. 63) is **DENIED**.

It is further **RECOMMENDED**:

1.  Defendants limited Motion for Summary Judgment (Doc. No. 61) be **DENIED**.

2.  Defendant's Motion to Dismiss (Doc. No. 47) be **GRANTED** as to Count 3 of the TAC, the claim for medical negligence against Defendant Ravi, and **DENIED** as to Counts 1 and 2 of the TAC.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    June 14, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

30