UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL RIOS,<br>Plaintiff,<br>v.<br>NANDAKUMAR RAVI and JOSEPH DRAGON,<br>Defendants. | Case No. 1:19-cv-01009-KES-HBK (PC)<br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS DRAGON AND RAVI'S EXHAUSTION-BASED MOTIONS FOR SUMMARY JUDGMENT<br>(Docs. 99, 101)<br>FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court are the exhaustion-based motions for summary judgment filed on behalf of Defendants Joseph Dragon and Nandakumar Ravi on March 16, 2026. (Docs. 99, 101). Plaintiff, represented by counsel, opposed the motions, and Defendants replied. (Docs. 105–07). For the reasons below, the Court recommends granting the motions, entering judgment in Defendants' favor, and closing this case.

I. BACKGROUND

Plaintiff Israel Rios, a prisoner, proceeds on his Fourth Amended Complaint ("4AC") alleging: (1) an Eighth Amendment claim for deliberate medical indifference against Defendant Dragon; and (2) an Eighth Amendment claim for deliberate medical indifference against Defendant Ravi. (Doc. 93).

By way of background, the 4AC alleges that, on December 29, 2017, Plaintiff was transported from High Desert State Prison ("HDSP") to the Banner Hospital Emergency Room by

ambulance where he was given a presumptive diagnosis of peptic ulcers associated with an H. pylori infection. (*Id.* at 4). On January 5, 2018, Plaintiff was seen by the prison doctor, Dr. Greenleaf, who referred Plaintiff to gastroenterological specialists and placed a temporary medical hold on Plaintiff by updating his transport code to "Do Not Transport," effective through July 5, 2018. (*Id.* at 4–5).

On May 14, 2018, Plaintiff saw Defendant Nurse Practitioner Dragon. (*Id.* at 5). After reviewing Plaintiff's medical records, Defendant Dragon concluded that an EGD confirmed Plaintiff's H. pylori infection and that the gastrointestinal specialist planned to eradicate the infection through a biopsy and possible cholecystectomy. (*Id.*). However, the 4AC alleges that Defendant Dragon's interpretation of the plan was incorrect because a bacterial infection like H. pylori cannot be treated or eradicated through a biopsy; the biopsy occurs after the patient has undergone antibiotic treatment to confirm eradication. (*Id.* at 5–6). The 4AC alleges that the appropriate treatment required antibiotics, but that Defendant Dragon neither asked whether Plaintiff had received antibiotics nor reviewed the records to verify that information. (*Id.* at 6).

Additionally, on May 10, 2018, before Plaintiff's appointment, Defendant Dragon reviewed and updated Plaintiff's medical classification by removing the temporary medical hold and changing Plaintiff's transport code from "Do Not Transport" to "OK to Transport – No Precautions Needed." (*Id.*). As a result, Plaintiff was transferred from HDSP to Solano State Prison on May 15, 2018, and then to the Substance Abuse and Treatment Facility State Prison ("SATF") on May 18, 2018. (*Id.*).

On June 28, 2018, after being transferred to SATF, Plaintiff was seen by Dr. Chinyere Nyenke. (*Id.*) At that appointment, Plaintiff informed Dr. Nyenke that he had an active H. pylori infection and had never received antibiotics. (*Id.*). Dr. Nyenke ordered a consultation with Defendant Dr. Nandkumar Ravi, a gastrointestinal specialist. (*Id.*). On September 20, 2018, Mr. Rios saw Defendant Ravi at Mercy Hospital Bakersfield. (*Id.*). Defendant Ravi confirmed that Plaintiff was suffering from an active H. pylori infection, but did not prescribe antibiotics, and did not ask if Plaintiff had taken any antibiotics. (*Id.* at 7).

Plaintiff was transferred from SATF to Wasco State Prison on December 26, 2018, and

then again to Correctional Training Facility ("CTF") on December 27, 2018. (*Id.* at 7). At CTF, Plaintiff was finally prescribed antibiotics to treat his H. pylori infection. (*Id.*).

II. PARTIES' POSITIONS

A. Defendant Dragon's Exhaustion-Based Motion for Summary Judgment

Defendant Dragon filed the instant exhaustion-based motion for summary judgment on March 16, 2026. (Doc. 99). In support, Defendant Dragon submits a Memorandum of Points and Authorities (Doc. 99-1); an Additional Statement of Undisputed Facts (Doc. 99-2); a Joint Statement of Material Undisputed Facts (Doc. 99-3 at 1–14); the Declaration of Associate Director of the Health Care Correspondence and Appeals Branch ("HCCAB") K. Martin (Doc. 99-3 at 15–19), with Plaintiff's Health Care Appeals and Risk Tracking System ("HCARTS") grievance history (Doc. 99-3 at 21–42); excerpts from the Deposition[1] of Plaintiff Israel Rios (Doc. 99-3 at 43–83); the Declaration of Correctional Counselor II and Grievance Coordinator G. Lujan along with exhibits (Doc. 99-3 at 84–137); the Declaration of Correctional Counselor II Supervisor and Grievance Coordinator A. Cross along with exhibits (Doc. 99-3 at 138–48); the Declaration of Litigation Coordinator J. Barba along with cell search logs (Doc. 99-3 at 149–63); the Declaration of Correctional Officer B. Betancourt (Doc. 99-3 at 164–67); the Declaration of Correctional Officer G. Perez (Doc. 99-3 at 168–70); the Declaration of Office Technician R. Keyfauver (Doc. 99-3 at 171–73); Plaintiff's grievances and institutional level responses to those grievances (Doc. 99-3 at 174–79); Plaintiff's original Complaint (Doc. 99-3 at 180–86); Plaintiff's First Amended Complaint (Doc. 99-3 at 187–92); Plaintiff's Second Amended Complaint (Doc. 99-3 at 193–98); Plaintiff's original Complaint from Case No. 2:20-cv-146-KJN (Doc. 99-3 at 199–205); and the Declaration of R. Lawrence Bragg (Doc. 99-4).

Defendant Dragon argues that Plaintiff did not properly exhaust his claims against him. Specifically, Defendant Dragon contends that Plaintiff acknowledges never submitting a prisoner grievance or appeal challenging Dragon's failure to appropriately treat Plaintiff's H. pylori infection or release the medical hold, which form the basis for the two claims asserted against

[1] Defendants also filed the full deposition transcript separately from their motions for summary judgment. (Doc. 104).

Defendant Dragon. (Doc. 99-1 at 8). Additionally, while Plaintiff argued that he had submitted a grievance regarding his transfer despite a medical hold, there was no record that the grievance had been received. (*Id.*). And even if the alleged grievance had been submitted, Plaintiff's description of that grievance demonstrated that Defendant Dragon was not named in it, which Plaintiff was required to do by regulation. (*Id.*).

Defendant Dragon further contends that, should Plaintiff argue that administrative remedies were unavailable to him because he was allegedly threatened to not file grievances, the alleged threat post-dated the purported grievance challenging Defendant Dragon's conduct, demonstrating that the appeal process was still available at the time of the original submission. (*Id.* at 8–10). Further, there is no record that the officers named by Plaintiff conducted a cell search in the building where Plaintiff was housed when Plaintiff claims the threat was made. (*Id.* at 9). And Dragon argues that Plaintiff is judicially estopped from arguing that an administrative remedy was unavailable because he has previously represented in this action that administrative remedies were available. (*Id.* at 10). In the alternative, Dragon requests an evidentiary hearing. (*Id.* at 11).

B. <u>Defendant Ravi's Exhaustion-Based Motion for Summary Judgment</u>

Defendant Ravi filed the instant exhaustion-based motion for summary judgment on March 16, 2026. (Doc. 101). In support, Defendant Ravi submits a Memorandum of Points and Authorities (Doc. 101-1); a Separate Statement of Undisputed Facts (Doc. 101-2); a Joint Statement of Material Undisputed Facts (Doc. 101-3); the Declaration of Attorney Maria Zhurnalova-Juppunov (Doc. 101-4 at 1–2); Plaintiff's Fourth Amended Complaint (Doc. 101-4 at 3–14); excerpts from the Deposition of Plaintiff Israel Rios (Doc. 101-4 at 15–77); Plaintiff's original Complaint (Doc. 101-4 at 78–83); Plaintiff's First Amended Complaint (Doc. 101-4 at 84–88); Plaintiff's Second Amended Complaint (Doc. 101-4 at 89–93); Plaintiff's Third Amended Complaint (Doc. 101-4 at 94–104); Plaintiff's original Complaint from Case No. 2:20-cv-146-KJN (Doc. 101-4 at 105–10); Plaintiff's grievances and institutional level responses to those grievances (Doc. 101-4 at 111–33); Plaintiff's motion to amend to add Dr. Chinyere Nyenke to case and to remove Dr. Ravi from the case along with an exhibit (Doc. 101-4 at 134–

36); the Declaration of Associate Director of HCCAB K. Martin (Doc. 101-4 at 137–41), with HCARTS grievance history for Plaintiff (Doc. 101-4 at 142–63); the Declaration of Correctional Officer G. Perez (Doc. 101-4 at 164–66); the Declaration of Correctional Officer B. Betancourt (Doc. 101-4 at 167–70); the Declaration of Litigation Coordinator J. Barba along with cell search logs (Doc. 101-4 at 171–85); the Declaration of Office Technician R. Keyfauver (Doc. 101-4 at 186–88); and the Declaration of Correctional Counselor II and Grievance Coordinator G. Lujan along with exhibits (Doc. 101-4 at 189–242).

Defendant Ravi argues that Plaintiff did not properly exhaust his claim against him because Plaintiff did not submit any grievance complaining of Defendant Ravi's conduct before filing this action. (Doc. 101-1 at 10). Moreover, despite Plaintiff's argument that he was threatened to not file grievances, he cannot demonstrate that administrative remedies were unavailable to him because Plaintiff's testimony establishes that he did not even contemplate filing a grievance against Defendant Ravi. (*Id.* at 10–12). Defendant Ravi also contends that there is no basis in the record for the court to conclude that a reasonable prisoner of ordinary firmness would have sufficiently felt threatened and deterred from filing a grievance based on the alleged threats. (*Id.*). In the alternative, Ravi requests an evidentiary hearing. (*Id.* at 15).

C. <u>Plaintiff's Opposition to Defendants' Exhaustion-Based Motions for Summary Judgment</u>

On April 20, 2026, Plaintiff filed an opposition to both Defendants' motions for summary judgment. (Doc. 105). In support, Plaintiff filed a Response to Defendants' Statements of Additional Undisputed Material Facts along with a Separate Statement of Disputed and Undisputed Material Facts, (Doc. 105-1), and the Declaration of Attorney Carter White along with exhibits, (Doc. 105-2).

As to Defendant Dragon, Plaintiff argues that administrative remedies were effectively unavailable to him for two reasons. First, Plaintiff submitted a grievance between "mid-June and early-July 2018" challenging "his transfer from HDSP to SATF despite being on medical hold." (Doc. 105 at 4). Plaintiff never received a log number for the grievance, or a response from his institution. (*Id.*). Consequently, because the facility improperly failed to process his grievance,

administrative remedies were made effectively unavailable. (*Id.*).

Second, around "three to four weeks" after Plaintiff submitted his grievance, an Officer Perez conducted a cell search. (*Id.* at 5). During the search, Perez "destroyed" Plaintiff's copy of the grievance, and told him that any grievances Plaintiff submitted against anybody would not be filed, and "that he had no problem beating Plaintiff." (*Id.* at 5–6). Due to this threat, Plaintiff did not attempt to resubmit his grievance after he received no response, because he feared retaliation. (*Id.* at 6). As a result, administrative remedies were made effectively unavailable to him, because a reasonable prisoner of ordinary firmness would not continue to use the grievance process. (*Id.*).

In addition, Plaintiff argues that he is not judicially estopped from arguing unavailability because Plaintiff has not taken clearly inconsistent positions, Plaintiff did not persuade the Court to accept any position regarding exhaustion, and Plaintiff has not derived an unfair advantage. (*Id.* at 7–8). Plaintiff does not address Defendant Dragon's argument that Plaintiff's alleged grievance against him was defective because it did not include Defendant Dragon's name.

As to Defendant Ravi, Plaintiff argues that administrative remedies were unavailable because he feared retaliation from Perez if he filed a grievance against Defendant Ravi. (*Id.* at 8). Specifically, he argues that he subjectively believed that retaliation would occur, and that, objectively, a reasonable prisoner of ordinary firmness would have believed that there was a threat to not use the grievance process, and would not do so due to the threat. (*Id.* at 8–11). He does not address Defendant Ravi's argument that Plaintiff admitted he did not know he could file a grievance against Defendant Ravi.

D. <u>Defendant Dragon's Reply in Support of the Exhaustion-Based Motion for Summary Judgment</u>

On May 4, 2026, Defendant Dragon replied. (Doc. 106). In his reply, Defendant Dragon argues that even if the grievance had been processed it would not have exhausted claims against him because it is undisputed that the alleged grievance did not name him or the claims now asserted against him in this lawsuit. (Doc. 106 at 1, 2–5). Specifically, Plaintiff never attempted to submit a grievance concerning inadequate treatment of or medication provided for the H. pylori infection. (*Id.* at 3). And Plaintiff's grievance challenged his transfer, not Defendant Dragon's

decision to lift the medical hold. (*Id.* at 4). Additionally, Defendant Dragon repeats his argument that Plaintiff should be judicially estopped from contending that administrative remedies were unavailable. (*Id.* at 5–8).

Defendant Dragon also argues that the alleged threat did not prevent Plaintiff from submitting a proper grievance against Defendant Dragon because the alleged threat occurred approximately thirty days after the alleged grievance concerning the transfer was filed. (*Id.* at 8). In the alternative, Defendant Dragon repeats his request for an evidentiary hearing. (*Id.*).

E. Defendant Ravi's Reply in Support of the Exhaustion-Based Motion for Summary Judgment

Also on May 4, 2026, Defendant Ravi filed a reply. (Doc. 107). In support, he filed a Response to Plaintiff's Statements of Undisputed Material Facts. (Doc. 107-1). Defendant Ravi argues that Plaintiff's testimony that "at the time he was unaware he could file a grievance against [Defendant] Ravi" forecloses Plaintiff from establishing that Perez's alleged threats subjectively deterred him from filing a grievance against Defendant Ravi. (Doc. 107 at 4). Additionally Plaintiff's lack of knowledge did not excuse the exhaustion requirement. (*Id.*). Defendant Ravi further argues that it is undisputed that a reasonable prisoner would not have been deterred from filing a grievance against Defendant Ravi based on Perez's alleged threat. (*Id.* at 5–7).

## III. APPLICABLE STANDARD AND LAW

A. Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the "initial responsibility" of demonstrating the absence of a

genuine issue of material fact. *Id.* at 323. A dispute of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to return a verdict for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden shifts to the opposing party to present specific facts showing a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The party must present evidence of specific facts, by affidavit, or admissible discovery material, demonstrating a genuine dispute. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

The opposing party need not conclusively establish a material fact in its favor; it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply Rule 56 standards to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (internal quotation marks and citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc), *abrogated in part on other grounds by Perttu v. Richards*, 605 U.S. 460, 475 (2025). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains, however, with the defendant. *Id.*

B. <u>Exhaustion Under the PLRA</u>

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exceptions to the exhaustion requirement, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. Remedies are considered unavailable when: (1) the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the scheme is "so opaque that it becomes, practically speaking, incapable of use" so that "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44.

A prison's internal grievance process determines whether a grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. *Albino*, 747 F.3d at 1171. "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id*. (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). Accordingly, an

inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). If an inmate asserts that administrative remedies were unavailable to him because he was threatened "not to use the prison's grievance procedure," he is required to make both a subjective showing "that he was actually deterred from filing a grievance by the guards' threats," and an objective showing "that a reasonable prisoner of ordinary firmness would have believed that" a threat was communicated sufficient "to deter a reasonable prisoner from filing a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). If the Court concludes that a prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24.

C. <u>CDCR Custody Grievance Process</u>

The California Department of Corrections and Rehabilitation's ("CDCR") administrative remedy process governs this action.[2] *See* Cal. Code Regs. tit. 15, § 3084.1 (2011). To exhaust available remedies regarding non-healthcare appeals,[3] an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. *Id.* § 3084.2. A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance"). *Id.* §§ 3084.2(a), 3084.8(b). The grievance must "list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." *Id.* § 3084.2(a)(3). An inmate must submit the grievance within 30 calendar days of either: (1) "The occurrence of the event or decision being appealed," or; (2) "Upon first having knowledge of the action or decision being appealed," or; (3) "Upon receiving an unsatisfactory departmental response to an appeal filed." *Id.* § 3084.8(b)(1)–(3). The inmate "shall state all facts known and

---

[2] The court cites the regulations in force at the time relevant to this action. These regulations have since been amended. *See, e.g.*, Cal. Code Regs. tit. 15, § 3480–3487 (2026).

[3] Plaintiff testified that the grievance he filed challenging Defendant Dragon's conduct was "a regular custody grievance," and not a health care grievance. (Doc. 104 at 21 ¶ 8). Accordingly, only the regulations governing non-healthcare grievances are provided.

available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." *Id.* § 3084.2(a)(4). "First level responses shall be completed within 30 working days from date of receipt by the appeals coordinator." *Id.* § 3084.8(c)(1).

IV. MATERIAL FACTS RELEVANT TO EXHAUSTION

After reviewing the submitted evidence, the Court finds the following facts undisputed, unless otherwise noted:

- Plaintiff transferred from HDSP to California State Prison Solano on May 15, 2018, and then to the Substance Abuse Treatment Facility and State Prison (SATF) on May 18, 2018. (Doc. 99-3 at 2).
- Plaintiff sues Defendant Nurse Practitioner Dragon for deliberate indifference to a serious medical need in violation of the Eighth Amendment for failing to provide appropriate treatment for Plaintiff's H. pylori infection and for removing a temporary medical hold, which allowed Plaintiff to be transferred to another prison. (Doc. 99-3 at 3).
- CDCR had an administrative grievance process for inmates at all times relevant to this lawsuit, which allowed grievance issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. (Doc. 101-3 at 2).
- In 2018, CDCR and SATF had an administrative process in place for inmates allowing them to appeal any policy, decision, action, condition, or omission by CDCR having an adverse effect upon the inmate's health safety or welfare. (Doc. 99-3 at 6).
- Prior to June 1, 2020, inmates were required to follow the procedures set forth by California Code of Regulations, title 15, section 3084.1 through section 3085, involving three levels of review, listing the names of the involved staff members, if known, and any other identifying information, and the date of their involvement. (Doc. 99-3 at 6).

- Plaintiff was aware of how to utilize the CDCR health care grievance system prior to filing the lawsuit against Defendant Ravi. (Doc. 101-3 at 2).
- Plaintiff testified that he submitted a grievance challenging his transfer to SATF despite being on medical hold due to his H. pylori and gallbladder, by submitting it in the grievance box in his housing unit. (Doc. 101-3 at 6).
- Plaintiff submitted the grievance concerning the transfer in mid-June-early July 2018 by placing it in an appeal box in his building. (Doc. 99-3 at 8).
- Plaintiff testified he did not submit a health care grievance referencing Nurse Practitioner Dragon either failing to prescribe proper medication or improperly releasing a medical hold prior to naming Dragon as a Defendant in this action and testified that he submitted a grievance challenging the transfer despite being on a medical hold. (Doc. 99-3 at 4–5).
- Plaintiff testified that the grievance he submitted regarding his medical hold at the High Desert Prison, did not mention any officers at the SATF. Plaintiff further testified that the grievance did not mention Defendant Dragon or Defendant Ravi and did not make allegations about getting antibiotics for H. pylori treatment. (Doc. 101-3 at 7).
- Plaintiff never received a response or log number for the grievance he testified he submitted at SATF. (Doc. 101-3 at 9).
- There is no record at SATF that Plaintiff submitted an appeal in 2018 alleging that he was improperly transferred because of an existing medical hold. (Doc. 99-3 at 7).
- There is no record at HDSP that Plaintiff submitted an appeal in 2018 alleging that he was improperly transferred because of an existing medical hold. (Doc. 99-3 at 8).
- Plaintiff testified that around the end of July or early August of 2018, Officer Perez searched his cell and told Plaintiff that, "He had a stack of [grievances] in his house of grievances against him that never got filed, and he told me if I wanted to do anything about it, he had no problem beating me." (Doc. 101-3 at 7).

- Plaintiff testified that after this 2018 cell search, the copy of his grievance regarding the medical hold had spilled coffee and food all over it by the correctional officers, that he threw it in the garbage because it was unreadable. (Doc. 101-3 at 8).
- Plaintiff testified that he did not make an attempt to recopy the grievance because of his fear based on what Officer Perez had said. (Doc. 101-3 at 8).
- Plaintiff testified that after the cell search took place, he did not submit any other grievances at SATF. (Doc. 99-3 at 13).
- Plaintiff was seen by Defendant Ravi on September 20, 2018. (Doc. 101-3 at 5).
- Plaintiff has not submitted any grievances against Defendant Ravi. (Doc. 101-3 at 5).
- Plaintiff testified that, at the time, he did not know he could file a grievance against Defendant Ravi, but even if he had known, he would not have submitted it because he had been threatened by Perez. (Doc. 101-3 at 9).

## V. ANALYSIS

The undersigned has considered the parties; briefing, evidence, and objections. Any argument or evidence not expressly discussed has nevertheless been considered to the extent it is admissible, material, and relevant.

### A. <u>Plaintiff Failed to Exhaust His Administrative Remedies As to Defendant Dragon Because He Did Not Identify Defendant Dragon in His Alleged Grievance</u>

Defendant Dragon seeks summary judgment because Plaintiff did not file a grievance concerning Dragon's conduct; because the alleged transfer grievance neither identified Dragon nor described the conduct underlying Plaintiff's claims; and because Plaintiff is judicially estopped from asserting that remedies were unavailable. (Doc. 99-1 at 1–2). The undersigned recommends granting Defendant Dragon's motion for summary judgment on the second ground—that Plaintiff's grievance failed to name Defendant Dragon.

As provided above, the regulations governing exhaustion of administrative remedies in effect at the time Plaintiff allegedly filed a grievance challenging his transfer state that an inmate grievance must "list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff

member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).

Here, the parties' joint statement of undisputed facts provides that Plaintiff "did not mention Defendant Dragon or not receiving antibiotics for H. pylori but was about being transferred for the medical hold because of Plaintiff's H. pylori and gallbladder issues." (Doc. 99-3 at 5). The underlying deposition testimony supports this assessment. In pertinent part, Plaintiff testified that the alleged grievance stated:

> I had talked to my counselor before I had any transfer and she had told me that they were going to wait for my endorsement to be transferred to expire because of my medical hold, and then after my medical hold expired, then they would re-endorse me for a transfer at a later date. Instead, a few days later, I get told I need to pack and be transferred the very following day after I packed. . . . I said in there that I had made it known to the officers at the time that I had talked to my counselor about it and what she had told me and that I didn't want to get transferred because I was fearing for my health along the way on the trip to be transferred in case any emergency will arise and I could die. . . . I wasn't asking to be transferred back, because then that would put my life still at risk once more. But I wasn't happy with the fact that they had transferred me without being taken care of the items that they said they were supposed to have taken care of as far as my health goes.

(Doc. 104 at 35–36, 39). Plaintiff does not dispute Defendant Dragon's omission from the alleged grievance, or meaningfully respond to Defendant's argument that summary judgment is warranted on this ground. (Doc. 99-1 at 9). Nevertheless, the Court independently determines whether Defendant is entitled to judgment as a matter of law. *Baxter v. City of Hemet*, 728 F. Supp.3d 1127, 1146 (C.D. Cal. 2024).

The PLRA does not itself require a prisoner to name a prospective defendant in a grievance. Rather, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In *Jones*, the governing grievance procedure did not require prisoners to identify particular officials; therefore, the plaintiff's failure to name a defendant did not defeat exhaustion. *Id.*

The California inmate grievance regulations in effect at the time of Plaintiff's alleged

grievance were different. Section 3084.2(a)(3) required an inmate to identify all involved staff members and list their "last name, first initial, title or position, if known, and the dates of the staff member's involvement." This placed a procedural requirement on Plaintiff to name Defendant in his grievance. Plaintiff testified that his grievance addressed his transfer "without being taken care of the items that they said they were supposed to have taken care of as far as my health goes." (Doc. 104 at 39). It is also uncontroverted that Plaintiff had an appointment with Defendant Dragon four days before he was transferred, and did not prescribe antibiotics at that time. (Doc. 93 at 5–6). The record establishes that Plaintiff had met with Defendant Dragon four days before the transfer and that the appointment had not resolved Plaintiff's medical concerns. The Court therefore concludes that Plaintiff had sufficient information to identify Dragon's involvement in the issue raised by the alleged grievance.

Plaintiff testified that he did not file a grievance regarding the facility's failure to prescribe "the proper antibiotics" for his H. pylori infection because he "didn't know that they were—they had prescribed me—they were supposed to prescribe me the medication for that." (Doc. 104 at 38). Viewed in his favor, this suggests that Plaintiff did not know Defendant Dragon was responsible for failing to prescribe antibiotics at the time he filed the alleged grievance. As stated above, Plaintiff was only required to name Defendant Dragon in the alleged grievance if his involvement in events underlying the grievance was known to Plaintiff at the time. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011). Because Plaintiff did not address this issue in his opposition, the Court concludes upon its own review of the record that this testimony does not raise a genuine issue of material fact as to whether Plaintiff was required to name Defendant Dragon in his alleged grievance. Although there is no evidence that Plaintiff knew at the time he filed the alleged grievance that Defendant Dragon was responsible for changing his transfer status or failing to prescribe antibiotics, the grievance also challenged Plaintiff's transfer "without being taken care of the items that they said they were supposed to have taken care of as far as my health goes." (Doc. 104 at 39). It is undisputed that Plaintiff met with Defendant Dragon four days before he was transferred, and that appointment did not resolve Plaintiff's medical issues. (Doc. 93 at 5–6). Accordingly, under Section 3084.2(a)(3), Plaintiff was required to name Defendant

Dragon in the grievance, because Defendant Dragon's involvement in the facility's failure to address "the items that they said they were supposed to have taken care of as far as my health goes" was known to Plaintiff when he filed the grievance, even if the specific explanation for why his health care issues were not "taken care of" (failure to prescribe antibiotics) was yet unknown to Plaintiff. (Doc. 104 at 39).

Because Plaintiff knew Defendant Dragon's identity and role but did not identify him in the grievance, Plaintiff failed to comply with section 3084.2(a)(3). His administrative remedies were therefore not properly exhausted as to his claims against Defendant Dragon. *See Jones*, 549 U.S. at 218; *cf. Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (finding no exhaustion defect where then-applicable California regulations did not require an inmate to identify responsible staff members).

*Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016), does not compel a different result. There, the prisoner failed to name several physicians in his grievance, but prison officials addressed the grievance on the merits through every available level of review and issued a final exhaustion decision. *Id.* at 656, 658–59. The Ninth Circuit held that grievance was exhausted because prison officials elected to address the merits of the grievance rather than enforce the procedural defect. *Id.* at 658–59; *see also Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir.2011).

Here, in contrast, Plaintiff received no response from the facility. (Doc. 101-3 at 9). Thus, Plaintiff's grievance was not fully considered on the merits through the available administrative process. Enforcing the identification requirement in these circumstances serves the exhaustion requirement's purpose of permitting the prison system to address the claim through its prescribed procedures before federal litigation.

Consequently, summary judgment on exhaustion is proper on this ground. The applicable grievance regulation required Plaintiff to identify the involved staff member, yet Plaintiff's grievance did not identify Defendant Dragon. Plaintiff also has not carried his burden to show that this omission should be excused because the administrative remedy was unavailable. Although Plaintiff asserts that he was threatened by Officer Perez, even assuming this occurred, Plaintiff testified that he submitted his grievance no earlier than mid-June, and he was threatened

around 30 days after submitting the grievance. (Doc. 104 at 21–22). Accordingly, Plaintiff's 30-day deadline to file a grievance that properly identified Defendant Dragon regarding his appointment and transfers (the latest of which occurred on May 18, 2018), had already expired before he was allegedly threatened. Cal. Code Regs. tit. 15, § 3084.8(b)(1)–(3) (2011). Finally, Plaintiff has not demonstrated that he otherwise provided sufficient information to alert prison officials to Defendant's alleged conduct, in view of his focus on the transfer itself and his broad invocation of his H. pylori infection without specific information.

Accordingly, the undersigned recommends granting Defendant Dragon's motion and dismissing Plaintiff's Eighth Amendment deliberate medical indifference claim against Defendant Dragon without prejudice for failure to exhaust administrative remedies.

B. Plaintiff Failed to Exhaust His Administrative Remedies as to Defendant Ravi Because He Admitted He Did Not Know He Could File a Grievance Against Him

Defendant Ravi seeks summary judgment on exhaustion grounds for two reasons: (1) he argues that Plaintiff did not submit any grievance complaining of Defendant Ravi's conduct because he did not know he could file one, rather than because Perez allegedly threatened him; and (2) even if the alleged threat occurred, a reasonable prisoner of ordinary firmness would not have sufficiently felt threatened and deterred from filing a grievance against Defendant Ravi. (Doc. 101 at 10–12). The undersigned concludes that summary judgment is warranted as to the first ground.

"Ignorance of the grievance process is generally not sufficient to show that remedies were unavailable, as inmates are expected to make a reasonable, good faith effort to discover and exhaust the appropriate procedure." *Miller v. Najera*, No. 12-cv-01288-LJO, 2017 WL 6538998, at *6 (E.D. Cal. Dec. 21, 2017) (citing *Sapp*, 623 F.3d at 823). Here, the parties' joint statement of undisputed facts provides that "Plaintiff testified that, at the time, he did not know he could file a grievance against [Defendant] Ravi." (Doc. 101-3 at 9; *see* Doc. 104 at 64). Therefore, the record establishes that Plaintiff did not file a grievance because he was ignorant of the process, which is not an excuse for failure to exhaust available remedies. Moreover, Plaintiff has not argued that his lack of knowledge was caused by an "opaque" or unavigable grievance process.

*Ross*, 578 U.S. at 648. In fact, the parties' joint statement of undisputed facts expressly provides that "Plaintiff was aware of how to utilize the CDCR health care grievance system." (Doc. 101-3 at 2). Consequently, there is no genuine issue of material fact as to Plaintiff's failure to exhaust his administrative remedies as to Defendant Ravi's alleged conduct.

Plaintiff contends that his failure to exhaust should be excused because he had been threatened by Perez to not file grievances, and he still feared doing so during the time he would have filed a grievance against Defendant Ravi. (Doc. 105 at 8–12). But that argument is meritless. As stated above, if an inmate asserts that administrative remedies were unavailable to him because he was threatened, he is required to make a subjective showing "that he was actually deterred from filing a grievance by the guards' threats." *McBride*, 807 F.3d at 987. The relevant question is not whether Perez allegedly threatened Plaintiff, but whether the threat caused Plaintiff not file a grievance. Plaintiff's testimony that he did not know he could grieve Ravi defeats his argument that Perez's alleged threat actually deterred him from filing such a grievance.

Therefore, there is no evidence that Plaintiff's administrative remedies were unavailable against Defendant Ravi. Accordingly, the undersigned recommends granting Defendant Ravi's motion and dismissing Plaintiff's Eighth Amendment deliberate medical indifference claim against Defendant Ravi without prejudice for failure to exhaust administrative remedies.

Accordingly, IT IS RECOMMENDED:

1. Defendants Dragon and Ravi's exhaustion-based motions for summary judgment (Docs. 99, 101) be GRANTED;
2. Plaintiff's Fourth Amended Complaint (Doc. 93) be DISMISSED without prejudice for failure to exhaust administrative remedies; and
3. The Clerk of Court be DIRECTED to enter judgment in Defendants' favor and close this case.

NOTICE TO PARTIES

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after

being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed fifteen (15) pages. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014). These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Dated: October 1, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE